FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS 2008 JAN 17  PM 5: 28
AUSTIN DIVISION

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
        DEPUTY

| | |
|---|---|
| DENNIS K. KUCINICH; KUCINICH §<br>FOR PRESIDENT 2008, INC.; AND §<br>WILLIE NELSON, §<br> §<br>PLAINTIFFS, §<br> §<br>V. §<br> §<br>TEXAS DEMOCRATIC PARTY; §<br>BOYD L. RICHIE; AND §<br>PHIL WILSON, INDIVIDUALLY AND §<br>IN HIS OFFICIAL CAPACITY AS §<br>SECRETARY OF STATE OF §<br>THE STATE OF TEXAS, §<br> §<br>DEFENDANTS. § | CAUSE NO. 1-08-CV-00007-LY |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BE IT REMEMBERED that on January 11, 2008, this Court called the above styled and

numbered cause of action for trial. Plaintiffs Dennis Kucinich, United States Congressman from the

State of Ohio and a candidate for President of the United States, Kuchinich for President 2008, Inc.,

and Willie Nelson, an individual Texas voter and supporter of Kucinich for President,[1] and

Defendants the Texas Democratic Party, Boyd L. Richie, Chairman of the Texas Democratic Party,[2]

---

[1] Kucinich for President 2008, Inc. is the official presidential campaign committee of Dennis J. Kucinich. Willie Nelson is identified as "a qualified elector in the State of Texas who intends to support Dennis J. Kucinich for President in the primary election." As Plaintiffs' interests are aligned, for convenience, the Court refers to Plaintiffs collectively as "Kucinich".

[2] For convenience, the Court refers to the Texas Democratic Party and Richie as "TDP".

and Phil Wilson, Secretary of State for the State of Texas,[3] appeared by counsel.[4]  After rendering

judgment and preliminary findings and conclusions in open court on January 11, the Court signed

a Final Judgment, which dismissed Kucinich's requests for a temporary restraining order and

preliminary injunction, denied TDP's motion to dismiss, and ordered that Kucinich take nothing by

his action against all Defendants (Doc. # 24).  The Court now renders complete findings of fact and

conclusions of law in support of the Final Judgment.  *See* Fed. R. Civ. P. 52(a).[5]

## Background

On December 18, 2007, the Federal Election Commission notified Kucinich that he qualified

for presidential primary election federal matching funds (Doc.#20, Exhibit 2).  *See* 26 U.S.C. § 9033.

On December 28, Kucinich timely filed his application for a place on the TDP presidential primary

ballot for the March 4, 2008 Texas primary elections.  On January 2, 2008, the last day for filing for

a place on the ballot, TDP informed Kucinich that his application was deficient and his candidacy

would not be certified to the Texas Secretary of State for a place on the TDP presidential primary

ballot, because Kucinich had crossed out the following portion of the loyalty oath on the application,

"I further swear that I will fully support the Democratic nominee for President whoever that shall

---

[3]  The Secretary of State for the State of Texas also serves as the Chief Election Officer of the State of Texas.  The Secretary of State is responsible for prescribing the form of the presidential primary ballots.

[4]  All Defendants waived formal service of Complaint and Summons and the parties agreed to proceed with this action in an expedited manner on an agreed record (Doc. #20), briefing, and oral argument on the merits.

[5]  All findings of fact contained herein that are more appropriately considered conclusions of law are so deemed.  Likewise, any conclusion of law more appropriately considered a finding of fact is so deemed.

be."[6]  The TDP further informed Kucinich that the application would only be accepted if Kucinich

re-signed the application with the full oath and faxed it to the TDP the same day, January 2.  The

TDP informed Kucinich that in all other respects, the application was sufficient.  Despite signing an

identical ballot application in 2004, which contained the same oath, Kucinich informed the TDP that

he would only pledge to support a nominee who would not employ war as an instrument of foreign

policy, and that he would not re-sign the oath based on this firm belief.

Kucinich commenced this action, asking the Court to:  (1) declare the TDP's loyalty oath

invalid and unconstitutional under the First and Fourteenth Amendments to the United States

Constitution as an improper restriction of his speech and his right of association and, because a

similar loyalty oath is not required by the Texas Republican Party or by the TDP for other public

offices, the oath violates his right of equal protection;[7] (2) temporarily and permanently enjoin TDP

from enforcing the oath; (3) order TDP Chairman Richie to certify to Secretary of State Wilson that

Kucinich is a candidate for the March 4, 2008 TDP presidential primary; and (4) order Wilson to

include Kucinich's name on the March 4 TDP presidential primary ballot.[8]  Kucinich also filed a

Motion for Temporary Restraining Order and Preliminary Injunction (Doc. #2), an Amended

Complaint On January 4, 2008 (Doc. #8), and a brief on the merits in support of his claims on

---

[6] The oath being contested by Kucinich reads: "I, _____ of _____, _____ County/Parish, _____, being a candidate for the Office of President of the United States, swear that I will support and defend the constitution and laws of the United States. I further swear that I will fully support the Democratic nominee for President whoever that shall be." *Texas Democratic Party Rules*, Article VII.A.2(b), http://www.txdemocrats.org/ (select "Rules" under "The Party" menu and select "Rules of the TDP"; then follow the hyperlink entitled "Article VII - National Delegate Selection Rules")  (last visited Jan. 9, 2008).

[7] U.S. Const. amend. I, XIV.

[8] 28 U.S.C. §§ 2201, 2202 (1994).

January 8 (Doc. #12).  TDP opposes Kucinich's requests and moved to dismiss the action for failure

to state a claim (Doc. #13).  *See* Fed. R. Civ. P. 12(b)(6).  Kucinich responded to TDP's motion to

dismiss and replied to TDP's opposition brief (Doc. #21).  TDP also replied to Kucinich's brief on

the merits (Docs. #19).  Also submitted for the Court's consideration is a declaration by Kucinich

(Doc. #23).

**Jurisdiction and venue**

The Court has federal-question jurisdiction over this action and has jurisdiction to grant

declaratory and injunctive relief.  *See* 28 U.S.C. §§ 1331, 2201, & 2202.  Additionally, venue is

proper in the Austin Division of the Western District of Texas because a substantial part of the

events giving rise to the claims occurred in the Austin Division.  *See id.* at § 1391(b).

**Analysis**

The issues for this Court to determine are:  (1) whether the TDP's loyalty oath affects

Kucinich's fundamental rights of association and future speech rights and places an undue burden

upon those rights under the First and Fourteenth Amendments;[9] (2) whether the fact that the TDP

only includes a loyalty oath for those seeking access to its primary ballot for the Office of President

of the United States violates the Equal Protection Clause of the Fourteenth Amendment;[10] and (3)

whether the TDP loyalty oath is unconstitutionally vague.

*A. Texas's statutory scheme for political party rule-making*

In Texas, primary elections are used to determine the political party's nominee to appear on

the general-election ballot.  *See* Tex. Elec. Code Ann. § 191.001 (West 2003) (requiring political

---

[9] *See* U.S. Const. amend. I, XIV.

[10] *See* U.S. Const. amend. XIV, § 1.

parties to have presidential primary election in most cases). State law requires a political party to

adopt rules for, *inter alia*, selecting the party's candidates. *See id.* at § 163.002. Further, state law

requires that the rules be adopted only by a state convention of the party. *See id.* at § 163.004. A

party's state executive committee, however, is granted the authority to adopt rules governing how

a candidate's name is included on a party's ballot. *Id.* at § 191.008. Temporary rules may be

adopted by a state executive committee, but only if doing so is necessary before the next state

convention, and further, any temporary rule must be voted on by the party at the next convention.

*See id.* at § 163.004. The Court notes that lacking from the record in this action is any challenge that

the TDP improperly promulgated the oath.

### B. Standard–Anderson/Burdick *Analysis*

Candidate-eligibility restrictions may implicate fundamental constitutional rights, including

the right of association and speech. *See Anderson v. Celebrezze*, 460 U.S. 780, 786-87 (1983).

However, not all such restrictions impose constitutionally suspect burdens. *Id.* at 788. For example,

"[a] State may require parties to demonstrate 'a significant modicum of support' before allowing

their candidates a place on that ballot." *California Democratic Party v. Jones*, 530 U.S. 567, 572

(2000). Courts analyze constitutional challenges to a state's election laws by (1) "consider[ing] the

character and magnitude of the asserted injury to the rights protected by the First and Fourteenth

Amendment that the Plaintiff seeks to vindicate," (2) "identify[ing] and evaluat[ing] the precise

interests put forward by the State as justifications for the burden imposed by its rule," and (3)

weighing the "legitimacy and strength of each of" the State's proffered justifications against "the

extent to which those interests make it necessary to burden the plaintiffs' rights." *Id.* at 789; *Burdick*

*v. Takusih*, 504 U.S. 428, 433 (1992); *Texas Ind. Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996).

To some extent, all election laws will impact constitutional associational rights. *Burdick*, 504 U.S. at 433. The Supreme Court does not require strict-scrutiny analysis or narrow tailoring in every election-law case with First and Fourteenth Amendment implications. *Id.* Instead, "[t]he rigorousness of the inquiry into the propriety of the state election law depends upon the extent to which the challenged regulation burdens First and Fourteenth Amendment rights." *Texas Ind. Party*, 84 F.3d at 182. An election law that severely restricts constitutional rights must be narrowly tailored to advance a compelling state interest. *Burdick*, 504 U.S. at 434. But a state's important interests in regulating elections are generally sufficient to justify reasonable, nondiscriminatory, restrictions. *Anderson*, 460 U.S. at 788; *Texas Ind. Party*, 84 F.3d at 182.

The *Anderson/Burdick* standard evolved to address state election laws and *Anderson* and *California Democratic Party* address issues related to a state's candidate-eligibility restrictions. This Court finds these authorities apply to the issues presented in this cause because of the connection between the TDP and Texas election laws. *See Smith v. Allwright*, 321 U.S. 649, 660 (1944) ("recognition of the place of the primary in the electoral scheme makes clear that state delegation to a party of the power to fix the qualifications of primary elections is delegation of a state function that may make the party's action the action of the state.") (discussing *United States v. Classic*, 313 U.S. 299 (1941) and overruling *Grovey v. Townsend*, 295 U.S. 45 (1935))).

These standards, of course, have been established for a reason: courts should involve themselves sparingly in the political process. Although courts should intervene to protect a fundamental right of a candidate or potential candidate, the judiciary should not engage in revising the rules of a political party merely because a potential candidate, or even the court itself, disagrees with the party's determination. A rule may be ill advised, an anachronism, disagreeable to some, or

legally unenforceable, but unless the rule impinges on a fundamental right implicating constitutional protection, a political party may enact and enforce it.

### C. Application

<u>1. Kucinich's First and Fourteenth Amendment Rights</u>

Kucinich argues that the oath impermissibly violates his constitutional right to associate and his future speech rights because attesting to the oath compels Kucinich to give up future association and speech rights in order to "fully support" the Democratic Party nominee. The parties agree that the oath is a moral obligation that is likely unenforceable at law. *See Westerman v. Mims*, 227 S.W. 178, 180-81 (Tex. 1921) (determining that oath gives rise to moral obligation as opposed to legal obligation; former of which is enforceable only through conscience of promisor and not courts). The Court agrees and finds that the oath at issue fails to give rise to any legal obligation to "fully support" the TDP's nominee. Kucinich is free to define "fully support" however he sees fit and act accordingly. Additionally, Kucinich has a choice of whether to associate with TDP. *See Ray v. Blair*, 343 U.S. 214, 230 (1952) ("A candidacy in the primary is a voluntary act of the applicant. He is not barred, discriminatorily, from participating but should he choose to associate the party requires that he must comply with the rules of the party."). These considerations impact the Court's assessment of the character and magnitude of the asserted constitutional injury.

An Alabama Democratic Party oath required electors to pledge their support for "the nominees of the National Convention of the Democratic Party for President and Vice-President of the United States." *Id.* at 215. The Supreme Court specifically analogized a party's ability to require its electors to pledge an oath with the party's ability to require its primary election candidates to do the same, which is the issue presented here. *Id.* at 227. Just as the elector in *Ray* had a choice

of whether to associate with the party and assume the obligation to vote a certain way at the national convention, Kucinich has a choice of whether to associate with TDP and assume an obligation to support the TDP's nominee.  The Court finds and concludes that it is bound by the holding in *Ray*.

Although courts have at times struck down discriminatory party rules, the oath before the Court is not an instance of a party seeking to disenfranchise classes of people on the basis of race, sex, national origin, or religion.  *See Allwright*, 321 U.S. at 664; *Nixon v. Herndon*, 273 U.S. 536 (1927).[11]  Kucinich's allegedly-infringed speech and associational rights pale in comparison with the rights sought to be vindicated in cases such as *Allwright*, in which the Supreme Court struck down a TDP rule prohibiting any non-white person from voting in party primaries.  *Id.*

The oath only restricts Kucinich's speech to the extent his conscience chooses to be restricted.  Accordingly, the Court determines that TDP's requirement that its presidential candidates sign a loyalty oath does not so significantly restrict Kucinich's First Amendment speech and associational rights that it requires a strict-scrutiny analysis and narrow tailoring to achieve a compelling state objective.  *See Texas Ind. Party*, 84 F.3d at 182.  It is enough that the party supports its requirement by asserting its important interests in regulating elections and in preventing association with those who will not support the party.  The dominant right of association in this case lies with the party.

-----

[11] In Texas, because African-Americans were systematically denied the right to vote, during the 1920's a series of cases began, which became known as as the white-primaries cases.  White primaries, originally established by state law, were declared unconstitutional.  *See Nixon v. Herndon*, 273 U.S. 536 (1927).  The Texas Legislature replaced the white-primary law with a law that authorized each political party to determine who shall be qualified to vote or otherwise participate in the party.  The TDP then enacted "white-primary rules," which were upheld as private rather than state action.  *See Grovey v. Townsend*, 295 U.S. 45, 55 (1935).  Ultimately the white-primary rules were declared unconstitutional as well.  *Smith v. Allwright*, 321 U.S. 649 (1944).  For an historical review see *Morse v. Republican Party*, 517 U.S. 186, 212 (1996).

Kucinich may still exercise his speech rights in myriad ways. Also, Kucinich could have chosen to be a candidate in the Texas Republican Party primary, a third-party candidate, or an independent candidate. To the extent the oath's effect on his conscience prevents him from associating with TDP, that right of association is outweighed by the associational rights of TDP members.

### 2. TDP's Interests

TDP asserts that the Supreme Court has recognized the ability of political parties to use loyalty oaths substantially similar to the one at issue in this case. *See Ray*, 343 U.S. at 231. Additionally, as justification for requiring Kucinich's compliance with its loyalty oath, TDP responds that it too has significant associational rights.

The First Amendment guarantees the right to associate for the advancement of beliefs and ideas as well as the right not to associate. *See Democratic Party v. Wisconsin*, 450 U.S. 107, 122 (1981); *Healy v. James*, 408 U.S. 169, 181 (1972). The right to associate or not extends to political parties. *See Tashjian v. Republican Party*, 479 U.S. 208, 214 (1986). The right of association is a two-way street. Indeed in no area is the political party's right to exclude more important than in the process of selecting its nominee. *See California Democratic Party*, 530 U.S. at 575. "That process often determines the party's positions on the most significant public policy issues of the day and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views." *Id.* (citing *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 372 (1997)). In Texas, the primary election will determine the TDP's nominee, thus it is a party affair and "the constitutional rights of those composing the party cannot be disregarded." *California Democratic Party*, 530 U.S. at 573 n.4.

Here Kucinich seeks the benefits of the TDP organization, infrastructure, and substantial membership; however, Kucinich is disinclined to follow the rules adopted by TDP's membership. Allowing Kucinich to be certified as a candidate forces the TDP's members to associate with Kucinich. The Court recognizes that just as Kucinich has a constitutional right to choose with whom he associates, TDP also has the right to set the terms under which it is willing to allow people to associate with it, so long as those terms are nondiscriminatory. *See Allwright*, 321 U.S. at 649.

### 3. Balancing

The Court finds that the TDP's right to not associate with Kucinich, should he decline to sign a properly promulgated party-loyalty oath, which does not seek to disenfrancise him on the basis of race, sex, religion, or national origin, outweighs Kucinich's right to associate with the TDP. Further, even if this Court were to determine that a fundamental right of Kucinich has been impinged, the Court finds that no undue burden is placed upon him by the TDP's requiring his signing its loyalty oath. In the final analysis, Kucinich seeks to associate with the TDP, but only on Kucinich's terms.

### D. *Equal Protection*

Kucinich argues TDP's loyalty oath violates the Fourteenth Amendment's Equal Protection clause because a similar oath is not required of TDP candidates for offices other than President, and because Republican candidates for President are not required to sign a similar oath. He asserts any relationship between the loyalty-oath requirement and seeking the TDP Presidential nomination is tenuous, and that TDP has failed to establish a justification for the distinction or to demonstrate its oath is tailored to achieve its objective without burdening his First Amendment rights of association and future speech.

The TDP responds that *Ray* established that an oath requirement does not violate constitutional equal-protection guarantees, and that an oath requirement is reasonably related to a legitimate legislative objective. Additionally, the TDP argues Kucinich's Equal Protection argument fails because he has not demonstrated that he is being treated differently than similarly-situated people; he is being treated like every other person seeking the Democratic nomination for President.

The Equal Protection Clause requires states to treat all similarly-situated people alike. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). If no fundamental right is implicated, states generally have wide latitude to enact legislation. *See Clements v. Fashing*, 457 U.S. 957, 962-63 (1982).

> The Equal Protection Clause allows the States considerable leeway to enact legislation that may appear to affect similarly situated people differently. Legislatures are ordinarily assumed to have acted constitutionally. Under traditional equal protection principles, distinctions need only be drawn in such a manner as to bear some rational relationship to a legitimate state end. Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them. *See e.g., McDonald v. Board of Election Comm'rs*, 394 U.S. 802, 808-09 (1969); *McGowan v. Maryland*, 366 U.S. 420, 425-26 (1961).

*Id.*

Kucinich argues the Court should evaluate TDP's required loyalty oath with a high level of scrutiny because the oath infringes his First Amendment rights. *See Buckley v. Valeo*, 424 U.S. 1, 25 (1976). However, as the Court has previously discussed, *Anderson* and *Burdick* provide the appropriate framework for evaluating an election-law case, or in this case, a party-rule case. The Court concludes that the character and magnitude of the asserted injury to Kucinich's First Amendment rights is not so significant to require strict scrutiny and narrow tailoring.

11

TDP has amply demonstrated its legitimate purposes for requiring the oath; parties too have associational rights and this oath is one of the ways TDP seeks to assure its presidential primary candidates share the party's philosophies. *Ray* is also instructive; there the Supreme Court upheld an oath that was "reasonably related to a legitimate legislative objective–namely, to protect the party system by protecting the party from fraudulent invasion by candidates who will not support the party." *Ray*, 343 U.S. at 226, n.14. Additionally, "[t]his requirement of a pledge does not deny equal protection or due process." *Id.*

In another context, *Anderson* recognized that presidential elections differ from state and local elections. *Anderson*, 460 U.S. at 794-95. For instance, a presidential-primary election transcends state lines and impacts a party's choice of its national candidate for President. There is not a constitutional impediment to a party's having different rules to select a presidential candidate or having rules different from other political parties. Kucinich is not similarly situated to Democrats running for offices other than President of the United States.

### E. Vagueness

A basic principle of due process is that vague laws, those that fail to duly define the prohibitions which would "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly" are void. *Grayned v. Rockford*, 408 U.S. 104, 108-09 (1972). The parties agree that the oath is a moral obligation that is legally unenforceable at law. *See Westerman*, 227 S.W at 180-81 (determining that oath gives rise to moral obligation as opposed to legal obligation, former of which is enforceable only through conscience of promisor and not courts).

The Court agrees and finds that the oath at issue fails to give rise to any legal obligation to "fully support" the TDP's nominee. Kucinich argues, however, that the word "fully" causes the oath to be unconstitutionally vague. It is difficult to see how the addition of "fully" requires a different moral obligation than would arise from loyalty oaths without "fully", which have previously been upheld. *See Ray*, 343 U.S. at 231. *See also Jones v. State of Ala.*, No. 00-CA-0442-RV-L, 2001 WL 303533, at *3 (S.D. Ala. Mar. 6, 2001). Lacking from the record is any attempt by Kucinich, prior to filing this action, to persuade TDP to change its rule regarding the oath. In the event Kucinich were to sign the oath, he must abide by the oath to the degree his conscience requires. The oath as it exists is a moral obligation, which is unenforceable at law. Although the oath is inartfully worded and arguably vague, the extent to which Kucinich must comply with its terms is solely within Kucinich's discretion. To compel Kucinich to sign the oath as a condition of candidacy violates no due-process right of Kucinich. Consequently, the Court finds and concludes that Kucinich's contention that the oath is unconstitutionally vague is without merit.

**Conclusion**

The Court concludes that Kucinich fails to show that the TDP's loyalty oath violates his right of association and future speech rights or violates his right of equal protection.

Having addressed all issues presented to the Court, this case is hereby Closed.

SIGNED this __17th__ day of January, 2008.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE